# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Curtis Maurice Williams,<br>    Petitioner,<br><br>v.<br><br>Commonwealth of Virginia,<br>    Respondent. | )<br>)<br>)<br>)    1:17cv51 (CMH/MSN)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Curtis Maurice Williams, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction of arson and threatening to burn a dwelling following a bench trial in the Newport News Circuit Court. On March 8, 2017, respondent filed a Rule 5 Answer and a Motion to Dismiss the petition as unexhausted because a state habeas petition filed by Williams remained pending before the Supreme Court of Virginia. After that state petition was refused on April 5, 2017, the Motion to Dismiss was denied, without prejudice to respondent's ability to file a renewed motion within thirty (30) days. [Dkt. No. 18] On December 15, 2017, respondent filed a renewed Motion to Dismiss with a supporting brief and exhibits, and supplied petitioner with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. [Dkt. No. 22.] Petitioner has filed no reply. Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's renewed Motion to Dismiss will be granted, and the petition will be dismissed, with prejudice.

### I. Background

On March 11, 2014, Williams was convicted of one count each of arson of an occupied

dwelling and threatening to burn a dwelling, for which he received an active sentence of twenty (20) years in prison. Case Nos. CR13000411-00 and CR 13000412-00.

Williams prosecuted a direct appeal, raising the sole claim that the evidence was insufficient to sustain the convictions. The Court of Appeals of Virginia denied the appeal on October 22, 2014. Williams v. Commonwealth, R. No. 0509-14-1 (Va. Ct. App. Oct. 22, 2014). A three-judge panel concurred in that result on March 20, 2015. [Dkt. No. 11, Ex. 1] Williams' subsequent petition for appeal was refused by the Supreme Court of Virginia on November 3, 2015, Williams v. Commonwealth, R. No. 150461 (Va. Nov. 3, 2015), and his petition for rehearing of that result was denied on February 4, 2016. Id.

On February 16, 2016, Williams filed a petition for a state writ of habeas corpus in the Newport News Circuit Court, arguing again that the evidence was insufficient to sustain his convictions. In a Final Order dated May 5, 2016, the Court held that to the extent Williams was re-arguing the same allegations he made on direct appeal before the Court of Appeals and the Supreme Court of Virginia, his claim was foreclosed by the holding of Henry v. Warden, 265 Va. 246, 576 S.E.2d 495, 496 (2003) ("[A] non-jurisdictional issue raised and decided either in the trial [court] or on direct appeal from the criminal conviction will not be considered in a habeas corpus proceeding."). To the extent that petitioner attempted to raise new arguments in support of his position, the Court determined that the claim was barred by the doctrine of Slayton v. Parrigan, 215 Va. 27, 205 S.E.2d 680, 682 (1974) ("A prisoner is not entitled to use habeas corpus to circumvent the trial and appellate process for an inquiry into a non-jurisdictional defect of a judgment of conviction.") Case No. CR16-H00314; Dkt. No. 11, Ex. 1. Williams did not appeal that decision.

On September 20, 2016, Williams filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, raising the following claims:

> A. The evidence was "insufficient and inconclusive."
>
> B. He received ineffective assistance of trial and appellate counsel for four reasons.

On April 5, 2017, the Supreme Court dismissed the petition. Specifically, it held that consideration of Claim A was foreclosed because "[p]etitioner challenged the sufficiency of the evidence to support his convictions in his first petition for a writ of habeas corpus and the court rejected that challenge. That judgment is conclusive. Code § 8.01-663." The Court further determined that the four claims of ineffective assistance were barred by Va. Code § 8.01-654(B)(2) because "[t]hese claims, the facts of which were known prior to petitioner's first petition for a writ of habeas corpus, were not previously raised." Williams v. Commonwealth, R. No. 161385 (Va. Apr. 5, 2017).

Meanwhile, Williams timely filed the instant federal petition by placing it into his institution's mailing system on January 5, 2017. [Dkt. No. 1 at 15] In it, he reiterates the same claims he made in his habeas corpus application to the Supreme Court of Virginia.

## II. Procedural Default

Williams' claims of ineffective assistance of counsel are procedurally defaulted from federal review. When petitioner raised these claims in his second state habeas corpus application, the Supreme Court of Virginia expressly found them to be defaulted pursuant to Va. Code § 8.01-654(B)(2). On federal habeas corpus review, § 2254(d) mandates that a state court's finding of procedural default be presumed correct, provided that the state court relied explicitly

on procedural grounds to deny petitioner relief and that the procedural rule relied on is an independent and adequate state ground for denying relief. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). Va. Code §8.01-654(B)(2), the basis upon which the Supreme Court of Virginia explicitly relied in defaulting Williams' ineffective assistance claims, has been held to be an adequate and independent state law ground that prevents federal habeas review of procedurally defaulted claims. See Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997) (determining procedural bar of successive habeas applications in Va. Code §8.01-654(B)(2) to be a well-recognized adequate and independent ground). Therefore, the ineffective assistance claims raised in this petition are procedurally defaulted.

Federal courts may not review a barred claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). Here, after respondent asserted in the brief supporting his renewed Motion to Dismiss that the ineffective assistance of counsel claims are procedurally defaulted, Williams made no attempt to demonstrate any of these factors. Accordingly, the claims of ineffective assistance raised in this petition are procedurally barred from federal review.

### III. Merits Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's

determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Under this standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

## IV. Analysis

In the sole claim which is federally cognizable, Williams argues that the evidence was insufficient to sustain his convictions.[1] On federal habeas review, the standard for a claim challenging the sufficiency of the evidence supporting a state conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

---

[1]Respondent urges the Court to reject this claim as inadequately pled because petitioner argues only that the evidence was "insufficient and conclusory." In light of the liberality with which courts are constrained to interpret pleadings filed by pro se litigants, Haines v. Kerner, 404 U.S. 519, 520 (1972), that argument is misplaced. It is noted that petitioner expressed his claim in the identical imprecise manner in his habeas corpus petition to the Supreme Court of Virginia, and that court found the claim to be barred because Williams had challenged the sufficiency of the evidence to support the convictions in his earlier state proceedings. Williams v. Commonwealth, R. No. 161385, slip op. at 1. As did the Supreme Court of Virginia, despite petitioner's vague language this Court perceives his intent to reiterate the claim of insufficiency of the evidence that was exhausted on his direct appeal.

5

could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis original). The federal court is required to give deference to findings of fact made by the state courts, and this presumption of correctness applies to facts found by both trial and appellate courts. 28 U.S.C. § 2254(d); Sumner v. Mata, 449 U.S. 539, 546-47 (1981); see Wilson v. Greene, 155 F.3d 396, 405-06 (4th Cir. 1998) (citing Wright v. West, 505 U.S. 277, 292 (1992) for the holding that a federal habeas court is prohibited from either "consider[ing] anew the jury's guilt determination or "replac[ing] the state's system of direct appellate review"). Moreover, it is not the role of a federal court to review the credibility of witnesses. United States v. Hobbs, 136 F.3d 384, 391 n.11 (4th Cir. 1998); United States v. Reavis, 48 F.3d 763, 771 (4th Cir. 1995); United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Instead, the federal court is bound by credibility determinations made by the state court trier of fact. United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983). In short, the federal court must determine only whether the trier of fact made a rational decision to convict. Herrera v. Collins, 506 U.S. 390, 402 (1993).

When Williams challenged the sufficiency of the evidence to sustain his conviction of threatening to burn a dwelling on direct appeal, the Court of Appeals of Virginia rejected it on the following holding:[2]

> Albert Thomas, [Williams], and several other individuals rented rooms at a house in Newport News. Thomas's room was located on the second floor next to [Williams'] room. Shortly after midnight on December 14, 2012, [Williams] became enraged when he discovered

---

[2] Because the Supreme Court of Virginia refused further review of this order without explanation, the reasoning of the Court of Appeals is imputed to it. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

6

his money was missing. [Williams], who had been drinking, stated several times that he "was going to burn the motherfucker down ... if somebody didn't come up with his money." [Williams] went on a rampage that evening and destroyed the furniture, appliances, and pictures on the wall, prompting Thomas to call the property owner and express his fear "that something is going to happen." The owner, who was out of town, asked him to keep an eye on [Williams].

After [Williams] threatened to burn down the house, Thomas called the police. The responding officers did not take [Williams] into custody, however. Instead, they gave him a warning.

Thomas remained fearful, however, because he knew [Williams] "was definitely going to carry out what he said he was going to do." Thomas remained awake and kept his bedroom door open. He heard [Williams] making a lot of noise next door and continuing to make threats. Eventually, Thomas heard [Williams] pull his bedroom door off of its hinges. At approximately 2:30 a.m., the smoke detectors went off and Thomas "heard something popping and sizzling." Thomas got up, walked down the hall, and saw a fire had broken out in [Williams'] room. [Williams] was in the room standing over top of a pile of furniture, the door, and his mattress and box springs. He was holding a red gas can in his hand. As [Williams] poured a liquid from the gas can, the fire grew stronger. [Williams] was "rapping, hollering and screaming about [how] he would burn this motherfucker down, somebody was going to pay, somebody had taken his money ...."

By the time Thomas saw the fire it was already "very intense," and had burned one side of the room and was progressing to the third floor. Thomas grabbed a fire extinguisher, but [Williams] intercepted him, and after struggling with Thomas, [Williams] threw the fire extinguisher out the window. Thomas went to the bathroom and filled a large container with water, but when he returned to [Williams'] room, [Williams] blocked the door.

Upon hearing screams from the third-floor tenant, Jackie Lewis, Thomas attempted to make his way to the third floor before the intensity of the smoke and flames forced him back downstairs. Thomas ran to the first floor and informed arriving EMT and fire department personnel that a tenant was trapped on the third floor. When Thomas stepped outside, he found [Williams] standing in front of the house. He heard [Williams] state repeatedly, "Burn,

motherfucker, burn, burn down, burn this bitch up."

Upon fireman Dick Greenhill arriving, he also saw [Williams] in front of the house. [Williams] told the firefighters repeatedly, "You'll never be able to put it out. I set it too good. Burn, motherfucker, burn. It's going to burn to the ground." [Williams] followed the fire department crew inside and continued stating that they were not going to be able to put the fire out. Eventually, one of the firemen pushed [Williams] outside onto the front porch.

When Police Officer Justin Sturgis arrived on the scene, the fire crew was already there. As Officer Sturgis and his partner approached the house, [Williams] came running toward them in a violent manner, screaming ... "[G]et me out of here, just take me to jail."

Meanwhile, Lewis jumped from the third floor window and shattered her ankle. At trial, she and the other residents corroborated Thomas's testimony that [Williams] went on a rampage the night of the fire and was destroying the contents of the house. Resident James Graves also noted that [Williams] warned him he should leave the house because he was "going to set this motherfucker on fire." Annette Payne, who lived on the second floor with [Williams] and Thomas, confirmed that she heard [Williams] threatening to burn down the house and that she later saw flames in [Williams'] room. She also stated that Thomas and [Williams] "got into it" after Thomas retrieved a fire extinguisher to put the fire out.

Fire investigator Lieutenant Tom Geiger testified that he spoke with [Williams] at the scene of the fire and that [Williams] told him he was "glad the motherfucker burned down." Lieutenant Geiger examined the scene, and after ruling out electrical causes, concluded that the origin of the fire was not accidental and that it began in [Williams'] room. Lieutenant Geiger noted that heaviest damage was in [Williams'] room and corroborated Thomas's account that furniture, a door, and bedding were piled in the middle of [Williams'] room. Based on the condition of the scene and statements from witnesses, Lieutenant Geiger determined that arson was the cause of the fire.

[Williams] contends the evidence was insufficient to support his conviction for threatening to burn the house because his statements did not "reasonably cause the receiver [of his statements] to believe that [he] w[ould] act according to his expression of intent." Perkins

v. Commonwealth, 12 Va. App. 7, 16, 402 S.E.2d 229, 234 (1991). He relies on the residents' testimony that they did not take his threats seriously and notes that, when the police arrived at the house the first time, he was merely warned rather than arrested.

\* \* \*

Here, we cannot say the verdict was plainly wrong or without evidence to support it. While [Williams] contends Thomas's testimony was not credible, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730 732 (1995). Thomas was sufficiently concerned about [Williams'] threats that he called the police and called the property owner, and he remained awake after the police left because he was afraid to go to sleep. Graves also confirmed that [Williams] warned him to leave the house because he was going to set it on fire.

The trier of fact is not required to accept a party's evidence in its entirety, Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986), but is free to believe and disbelieve in part or in whole the testimony of any witness. Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). Although Thomas admitted to a criminal record, his testimony regarding the events leading up to the fire was corroborated by the condition of the scene and by the testimony of other witnesses. Accordingly, the trial court was entitled to conclude, based on [Williams'] agitated state, his destruction of property, and warning to Graves, and the level of Thomas's fear, that [Williams'] repeated threats to burn down the house reasonably caused at least one recipient to believe he would act on his threat.

Williams v. Commonwealth, R. No. 0509-14-1, slip op. at 1 - 4.

When the appropriate deference is paid to the findings of fact made by the Virginia courts reflected above, it is readily apparent that a rational trier of fact could have found beyond a reasonable doubt that petitioner committed the crime of threatening to burn a dwelling. Because the disposition of this claim by the Supreme Court of Virginia was both factually reasonable and

in accord with controlling federal principles, Jackson, 443 U.S. at 319, the same result is compelled here. Williams, 529 U.S. at 412-13.

Williams also contends that the evidence was insufficient to sustain his conviction of arson. The Court of Appeals disagreed for the following reasons:

> Likewise, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that [Williams] was guilty of arson. [Williams] threatened to burn down the house in retaliation for his belief he had been robbed, and later that evening, that is exactly what he did. Thomas heard him stacking the fuel for the fire in his room and saw him standing over the fire with a gasoline can. [Williams] thwarted Thomas's attempts to extinguish the fire, and when fire department personnel arrived, he admitted he had set the fire, and openly celebrated its progression. When the police arrived, he asked to taken into custody. The results of the fire investigation were consistent with appellant having started the fire in his room.

Williams v. Commonwealth, R. No. 0509-14-1, slip op. at 5.

Again, for the reasons explained, this determination by the Supreme Court of Virginia was based on a reasonable interpretation of the facts and is in accord with federal principles. Jackson, 443 U.S. at 319. Its decision therefore may not be disturbed here. Williams, 529 U.S. at 412-13.

## V. Conclusion

For the foregoing reasons, respondent's renewed Motion to Dismiss this petition will be granted, and the petition will be dismissed with prejudice. An appropriate Order and judgment shall issue.

Entered this 20th day of April 2018.

*Claude M. Hilton*
United States District Judge

Alexandria, Virginia